

AUG 04 2022
Clerk, U.S. Courts
District of Montana
Missoula Division

UNITED STATES DISTRICT COURT

DISTRICT OF MONTANA

BUTTE DIVISION


STEPHEN P. KELLY,

General Delivery,

U.S. Post office.

Livingston, MT 59047,

    Plaintiff,


vs.


THE NATIONAL PARK SERVICE, a

federal agency, YELLOWSTONE NATIONAL

PARK, a federal agency, and TWO

UNKNOWN PARK RANGER'S, acting in

their official capacities as Law

enforcement personnel, Justice

center Bldg., Room #213. Mammoth,

( 1 )

Wyoming 82190,
Defendant(s).

### CIVIL COMPLAINT

Comes now the Plaintiff in the above styled action and does show cause for complaint as follows:

(1) THIS is an action sustained by, STEPHEN P. KELLY, hereinafter, PLAINTIFF KELLY, and SUES the defendant's jointly, THE NATIONAL PARK SERVICE, a federal agency, YELLOWSTONE NATIONAL PARK, a federal agency, and TWO UNKNOWN PARK RANGER'S, acting in their official capacities as Law enforcement personnel, alleging:

(A) Abuse of Law enforcement authority, (B) Interference and denial of medical treatment, and (C) cruel and unusual treatment, including unlawful detaining!

### PARTIES

(2) Plaintiff Stephen P. Kelly, was a homeless party during the summer

(2)

months of 2021, and was hitchhiking
directly outside of yellowstone
National park, in Gardener montana,
on the montana side of the park
entrance.

(3) Governmental defendant's,
The National Park service, is owned
by the united states government,
and has a widespread numeration of
parks throughout the united states,
including the yellowstone National
park at mammoth wyoming.

(4) Governmental defendant's,
yellowstone National park, exists
as federal government agency, and
is owned by the united states government,
and has Law enforcement park
ranger's assigned to different
sections of the park, concisely in
this case at mammoth, directly
outside of Gardener montana.

(5) capacity defendant's, TWO
UNKNOWN PARK RANGER'S, are Law
enforcement personnel assigned
to the mammoth division of the
yellowstone National park, and

Very often they in fact enter into the city of Gardener, and into Montana outside the confines of the park, in which to enforce federal Legislations in the state of Montana.

## NATURE OF THE CASE

(6) This concise case is predicated upon a "[Bivens]" action - 403 U.S. 388 1971. (six unknown agents). Defendant's are a federal agency.

(7) A related case in fact exists, in the captioned matter of, Stephen Kelly, vs. Montana State University police Department. CASE No. # CV 19-41-BU-BMM-KLD. Judge Desoto in fact ruled upon these same aspects! (The Fourth Amendment) see copy - Exhibit (A).

(8) Related to this issue upon Two unknown park ranger's, here is a very related Violation of the Fourth Amendment, where U.S. Magistrate Judge, Kathleen L. Desoto,

(4)

in her order of November - 7th, 2019, ruled that the Fourth Amendment, demands that a police officer have at least reasonable suspicion that something unlawful is afoot before he may interfere with a person's actions !!! (see pg. #3, of that concise order here attached. The Two Park ranger's named here have clearly engaged to a related act and severe violation as the M.S.U., police officer engaged into upon the M.S.U., campus in Bozeman.

## JURISDICTION AND VENUE

( 9 ) Defendant's are a federal agency, where this federal court obtains subject matter jurisdiction over this case pursuant to a "[Bivens]" action ! Two unknown federal park ranger's are named in this concise action, related to (Bivens).

(10) Plaintiff Stephen Kelly, is a citizen of the united states, and is a resident of the state of montana, and has resided in the

State of Montana at all times material to this action.

(11) Governmental defendant's, the National park service, is a federal agency and is liable for suit under "[Bivens]".

(12) Governmental defendant's, Yellowstone National park, is a federal agency, and obtains its principal place of business in the state of Wyoming! Its law enforce-ment park ranger's often enter into Montana, and attempt to enforce non-jurisdictional laws.

(13) capacity defendant's, Two unknown park ranger's, are in fact residence of the state of Wyoming, and have resided in the state of Wyoming at all times material to this action. They reside in Park housing within the confines of yellowstone National park.

(14) Venue is proper in the District of Montana federal court because each event giving rise to this action accrued in the District of Montana. 28 U.S.C. § 1391.

## STATEMENT OF FACTS

(15) During the summer month of May, 2021, Plaintiff KELLY, was in fact hitchhiking directly outside of the gate to Yellowstone National Park in Gardener Montana, outside the confines of the park, and outside of the state of Wyoming, upon such time at which two park ranger's noticed KELLY, and then turned around in their official law enforcement vehicle, and commen-ced into harassing KELLY, at the sole cause that KELLY, was hitchhiking near the gate to Yellowstone National Park, and was attempting to enter into the park and to also hitchhike through the park!

(7)

(16) Plaintiff KELLY, had in fact inquired with an attorney in Livingstone - Montana prior and before he actually would be hitchh- -King into the actual park, as to if it were Legal under federal law to hitchhike within the confines of yellowstone National park, where this attorney looked up the Legislation and clearly advised KELLY, that it was in fact Legal in which to hitchhike through the park! Despite this Legal entry of hitchhiking through the park, the two park ranger's unlawfully stood in front of KELLY, blocking him from moving forward in which to enter into the park, qusting to KELLY, that it was in fact unlawful in which to hitchhike within yellowstone National park!!!

(17) Shortely after, on the following day, Plaintiff KELLY, per phone in fact inquired directly with the A.C.L.U., in Montana and also Locating quality information that pursuant to federal law that hitchhiking was clearly Legal in

( 8 )

the park. This alone, exists as unlawful intimidation by the Two park ranger's, and violates the Fourth Amendment where KELLY, had done nothing unlawful sufficing the ranger's interference!!(M.S.V).

(18) The Two park ranger's, made clear to KELLY, that because he was hitchhiking, that he was in fact being denied entry into the park by the ranger's, yet again, it is 100% legal in which to hitchhike in the park!!

(19) A severe further constitutional violation rose where, the Two ranger's denied KELLY, to camp over-night in the tent camping area at the mammoth campground, because as the ranger's asserted it to KELLY, he was in fact a homeless class person, and even though KELLY, had the cash money on hand in which to pay for a tent site, the Two ranger's clearly prohibited KELLY, from camping at a desig-nated campsite in the park.

(20) The denial in which for KELLY, to tent camp where every other citizen at which were not homeless, is a severe violation of the Fourteenth Amendment, "[equal protection under the Law]"

(21) A person cannot be denied an equal right because of a specific class, and or his poverty, or of merely being homeless !!!

(22) Further, this same process escalated into the same two park ranger's forcing KELLY, to provide his I.D. card to the ranger's, resulting into the ranger's exec-- uting a warrant check upon KELLY, on the N.C.I.C., where the ranger's did in fact locate an actual warrant upon KELLY, out of Washi-- ngton state, where this concise warrant was in fact an Eighteen, (18) year old warrant at which clearly stipulated within the N.C.I.C. computer system, (non- extraditable) any place outside of Washington state !!!

(23) The supervisory, and senior park ranger on site took the matter into his own hands, despite the warrant stipulating that Washington state would in fact solely extradite KELLY, only within the confines of Washington state, where the ranger's abused his legal authority detaining KELLY, for an unreason- -able time frame of one and a half hour's, while the ranger called two consecutive entitie's in Washington state, (a) the police department whom which obtained the warrant, and the, (b) prosecu- -ting attorney's office whom which had filed criminal charges, and issued the warrant, the ranger nudging far over the legal line, "(outside his jurisdictional)" boundries, requesting to those agencie's in Washington state, as to if they were 100% certain that they did not desire for KELLY, to be held for extradition to Washington state!! The (non-extraditional) clause and clear stipulation on

the N.C.I.C. computer
system should have Legally
existed as enough for the
ranger's to promptly release
KELLY, without further detaining,
or "[interference]"!!!(see
exhibit (A), ps. three of order per
the Hon. Kathleen L. Desoto.
order dated — November, 7th, 2019,
(Analysis portion of the order).
(Interference) clearly rises here
in this case where once KELLY,
was cleared in the computer
system on the official N.C.I.C.,
the ranger's in fact obtained
no further authority or Jurisdic-
-tion in which to hold and
detain KELLY!

(24) Severe denial of prompt, and
immediate medical attention
was imposed upon KELLY, by the
supervisory ranger's where KELLY,
was in fact becoming over-heated
due to the excessive hot sun, and
forced by the ranger's to stand for
a prolonged time period without
water, where the ranger's were
in fact sitting within an air

(12)

conditioned vehicle, and due
to the refusal of his requested
water made directly to the
ranger's, KELLY did in fact
suffer a very serious heat stroke,
where once he was much later
released by the ranger's, he in
fact spent three (3) consecutive
day's in a hospital in sole
results of a mere heat stroke,
caused and brought upon solely at
the hands of these two park
ranger's !! KELLY, had made most
clear to the ranger's that he
felt a severe heat stroke coming
on him, and that he needed
prompt medical care, and KELLY,
clearly requested an ambulance
numerous times diretly to the
park ranger's! KELLY, also pleaded
for a bottle of water at which the
ranger's clearly had in their law
enforcement vehicle, however,
most flabergasting the one
supervisory ranger made clear to
KELLY, that he did in fact
obtain within the confines of
his vehicle several bottles of
cold water's, thus the water's

(13)

were not for public distribution, and refused to, (a) call an ambulance for KELLY, and (b) in fact refused KELLY, a bottle of water!

(25) The two ranger's further interfered with and clearly violated a ninth circuit ruling, the ruling making it very clear that homeless person's sleeping upon a public sidewalk, cannot be charged, cited, or removed by law enforcement in the event that they in fact obtain no other place to sleep. This Ninth cir. ruling is clearly non-flexible, and most firm!!!

(26) These same two park ranger's, engaged into two addit-ional lawful violation's, where about seven (7) day's later after KELLY, was in fact released from the hospital in results of the heat stroke, he in fact returned to the Gardener-Montana, and in light of the clear legalities of

(14)

the Ninth circuit ruling, KELLY, needed a safe place to sleep, and to do so outside of a dangerous bear threat area, where KELLY, was in fact sleeping upon a local Gardener city sidewalk directly in front of the Gardener Baptist church, and most clearly was not blocking the sidewalk, and was merely sleeping within the confines of a warm sleeping bag, when the same two park ranger's arrived far outside the official jurisdiction of the park, and commenced into harassing KELLY, for the mere and isolated cause of sleeping upon a public sidewalk, (a) the rangers exceeding their isolated federal jurisdiction far outside the confines of the park, and interfering with KELLY's action's upon a sole city sidewalk, and (b) the ranger's severely interfering with and violating a clear Ninth cir. ruling in directing KELLY, to refrain from sleeping upon a city sidewalk, in the city

Jurisdictional realm of
Gardener Montana, and nothing
what so ever to do with the
jurisdiction of the park, or any
federal authority what so
ever!

(27) Further, in severe
violation of the clear Ninth
circuit ruling, the two park
ranger's, also in severe violation
of the Fourth Amendment,
under unlawful, "[search and
seizures]" commenced into
(a) unlawfully removing Kelly's
personal camping gear, and
taking it from him without
legal cause, and without any
seizure warrant from any court,
and (b) in severe violation of
the clear Ninth cir. ruling, in
the matter of; Garcia, vs. city
of Los Angeles, the two park
ranger's. in retaliation of
Kelly, sleeping upon a public
city sidewalk, removed other
entitled personal property
without any required seizure
warrant per any court, item's

(16)

deemed as follows: (1) his cell
phone, (2) numerous Legal papers,
and court document's existing
of document's per the fed.
court for the District of mont.,
in previous cases, (3) a news
paper, containing an article
on KELLY, in the Livingston
montana news paper, (4) a
Letter addressed to KELLY,
from U.S. Sen. Jon TESTER, (5)
a Letter addressed to KELLY, from
Helena private attorney-steven
shapiro, and (6) eight (8) consec-
-utive photo's of KELLY's family,
and church friend's, all of
which severely violate the
Ninth circuit ruling in; (A),
Garcia, vs. city of Los Angeles.
Ninth cir. No. #20-55522. Dist.
court No. #2:19-CV-06182-D.S.F.-
PLA. (B) An additional ruling
in the matter of; martin, vs.
city of Boise! A homeless party
cannot be criminalized for
the cause of sleeping upon a
public/city sidewalk, and
cannot be forced to depart!!!

(17)

(28) The two park ranger's made clear to KELLY, that they would in fact arrest him, in any event that KELLY, would continue to sleep upon a city sidewalk, even so much as on a public sidewalk within the sole city jurisdiction of Gardener-Montana, and outside of the confines of the National park, most unlawfully intimidating KELLY, severely abusing their actual Law enforcement authority!!! The Judicial ruling's quoted above, does qualify the forcing of a homeless person to leave and depart from a public sidewalk, while sleeping, as "[cruel and unusual punishment]".

## CLAIM ONE

(29) The denial in which to camp within a National park solely at the cause of a person's homeless class, severly violates the united States constitution, and clearly

(18 )

violates Plaintiff's civil rights protected under the Fourteenth Amendment, (equal protection under the Law)!

## CLAIM TWO

(30) once a different state clearly articulates that a warrant upon the official N.C.I.C, is non-extraditable outside the sole jurisdictional state, then Law enforcement in another state obtains no subject matter authority in which to hold, detain a party any such time Lengthy in addition to the instant moment at which the (non extraditional) status is in fact verified upon the N.C.I.C.!

## CLAIM THREE

(31) For the National Park Service and its two Law enforce-ment ranger's to hold Plaintiff outside in the excessive heat

for a Lengthy period of time,
and to refuse Plaintiff drinking
water, does in fact exists as
cruel and unusual in severe
violation of the Eighth Amend-
-ment!

## CLAIM FOUR

(32) A Ninth circuit ruling is
most clear that in any event
that a homeless citizen has no
other place to sleep other than
a public sidewalk, then Law
enforcement personnel, in this
case, two assigned yellowstone
National Park Ranger's), are
prohibited from removing, citing,
or arresting, a homeless party, such
as Plaintiff in this concise case!
The Ninth circuit found cruel and
unusual punishment as a factor
in the Idaho matter of Martin,

**VS.** city of Boise, where a person now, and to date, most certainly cannot be criminalized for sleeping upon a public sidewalk!!!

### RELIEF

WHEREFORE, upon the premises considered, it is respectfully requested upon this Hon. court for the entry of a judgement as follows:

(A) Find that because plaintiff is no longer homeless, that declaratory judgement, and injunctive relief would not suffice in this concise case, thus, civil damages upon plaintiff exists, where he is in fact entitled to financial relief as such, sufficing his excessive

pain and suffering of physical,
mental and emotional distress,
caused and brought upon at the
sole hands of defendant's!

(B) civil jury trial requested.

(c) Find this civil complaint
plausible upon its face.

(d) Find that a cognizable
Legal theory exists where
this Hon. court can in fact
draw a reasonable inference
upon which relief can be
granted.

(e) Award plaintiff with
actual damage awards in an
amount of, $465,000.

(22)

I Declare under penalty of perjury the foregoing to be true and correct.

Signed this 28th, Day of July, 2022.

_____
(SIGNATURE OF PLAINTIFF)